---

### In re GARY et al.

(District Court, S. D. Texas, at Victoria.)

No. 126.

1. **Fraudulent conveyances ⟜47—Texas Bulk Sales Act does not prohibit transfers of fixtures alone.**

   The Texas Bulk Sales Act,[1] prohibiting a sale or transfer in bulk of a stock of merchandise or merchandise and fixtures, except under conditions therein named, does not prohibit the transfer of the fixtures of a store apart from the stock of merchandise.

2. **Fraudulent conveyances ⟜47—Texas Bulk Sales Act does not apply to mortgages.**

   The Texas Bulk Sales Act,[1] prohibiting sale or transfer of merchandise and fixtures in bulk, except under specified conditions, including a notice to all creditors of intended transfer, does not apply to a transfer by chattel mortgage, which was already covered by Rev. St. Tex. art. 3970.

3. **Statutes ⟜181(1)—Supposed intention of Legislature is not safe guide for construction.**

   The supposed intention of the Legislature in enacting a statute is not a safe guide to construction, and a decision should not be based thereon until all other guides have failed.

4. **Statutes ⟜214—Definition in Bankruptcy Act of "sale and transfer" does not apply to term used in state statute seeking to prevent bulk sales.**

   The definition in the Bankruptcy Act (Comp. St. §§ 9585–9656) of "sale and transfer," as used therein, does not govern, in bankruptcy proceedings, the construction to be placed on those words as used in state statute seeking to prevent bulk sales.

5. **Courts ⟜366(1)—Construction of state statute by Texas Court of Civil Appeals, and not by Supreme Court, is not controlling on federal court.**

   The construction given to a statute by the highest court of the state becomes part of the statute, and must be given effect by federal courts when applying that same statute; but where a Texas statute has been

---

[1] Vernon's Ann. Civ. St. Supp. 1918, arts. 3971–3973.

construed by the Court of Civil Appeals, and not by the Supreme Court, which is the highest court of that state, the federal court is not concluded thereby.

**6. Courts ☞366(4)—Decision of state court is not controlling, when question was not before the state court.**

The federal court is not bound to follow the analogies of a ruling given by the highest court of the state as to the meaning of a statute, where the very question at issue before the federal court has not been decided by the state court.

In Bankruptcy. In the matter of Enos Gary and others, bankrupts. On petition of M. Halff & Bro., a corporation, to review an order of the referee disallowing the claim of petitioner as a secured claim. Petition sustained, order of referee reversed, and matter remanded, with directions.

Henry A. Hirshberg, of San Antonio, Tex., for petitioner.

J. T. Linebaugh and Proctor, Vandenberge, Crain & Mitchell, all of Victoria, Tex., for trustee.

HUTCHESON, District Judge. This is a proceeding on an application to review the order of C. C. Carsner, referee in bankruptcy, disallowing the claim of M. Halff & Bro. as a secured claim. The certificate of the referee sets out the question and the facts upon which it rests briefly, and is as follows:

"The question at issue is whether a mortgage given upon all of the furniture and fixtures of a mercantile establishment is within the meaning of and prohibited by the Bulk Sales Act of the state of Texas, appearing in the statutes as article 3971 of the Revised Statutes of Texas, as amended by the Acts of the Legislature of March 23, 1915, c. 114, § 1. The facts out of which the question at issue arose are as follows:

"By a mortgage dated the 2d day of February, A. D. 1921, the Farmers' Mercantile Company, then a corporation, afterwards dissolved and operated as a copartnership, conveyed to M. Halff & Bro., a corporation incorporated under the laws of the state of Texas, and having its domicile and place of business in San Antonio, Bexar county, Tex., all furniture and fixtures in the store of the Farmers' Mercantile Company at Ganado, Tex. The furniture and fixtures are listed and enumerated in the mortgage. Subsequent thereto, on the 23d day of August, A. D. 1921, the Farmers' Mercantile Company, acting by and through the several individuals composing the firm, filed a voluntary petition in bankruptcy, and was duly adjudged bankrupt on the same day. Subsequent to the adjudication in bankruptcy M. Halff & Bro. presented its claim, aggregating $2,087.70, and asked for its allowance as a secured claim by virtue of the above-mentioned mortgage of February 2d. Upon consideration of the foregoing claim the referee entered the following order:

"At Victoria, in said Southern district of Texas, before C. C. Carsner, one of the referees in bankruptcy in said court, on this 5th day of December, 1921, came on to be considered the claim of M. Halff & Bro. in the sum of $2,087.70, presented herein for allowance as a secured claim; and it appearing to the court that said claim purports to be secured by a chattel mortgage upon all furnitures and fixtures in the store of the Farmers' Mercantile Company at Ganado, Tex., said mortgage being dated the 2d of February, A. D. 1921, and the referee being of the opinion that said mortgage is a transfer, within the meaning of and prohibited by the Bulk Sales Act (article 3971 of the Revised Statutes of Texas, as amended by the Acts of the Legislature of March 23, 1915, c. 114, § 1):

"It is therefore ordered that said claim be not allowed as a secured claim, but be and is hereby allowed as an unsecured claim against the estate of the above-named partnership, to which order M. Halff & Bro. duly excepts and makes application for review."

· The court has been greatly assisted in arriving at an early determination of the question not only by the certificate of the referee, in which he states the reasons and authorities upon which he bases his conclusions, but by the briefs of counsel for the creditor and the trustee. The referee and trustee rely upon an opinion by the Court of Civil Appeals in Beene v. National Liquor Co., 198 S. W. 596, to establish their position that a mortgage is a sale or transfer within the meaning of the Bulk Sales Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 3971–3973), and upon their view of what the evil was which the Legislature designed to meet and prohibit by the statute, to bring a transaction relating to fixtures alone within the terms of the act.

The creditor meets the position of the trustee by asserting: (1) That whether a mortgage on merchandise would or would not be a sale or transfer within the Bulk Sales Act is immaterial, because no merchandise, but only fixtures, are involved in this mortgage; and (2) that, if the statute be construed to cover sales or transfers of fixtures alone, it is not the law that a mortgage is a sale or transfer within the meaning of the Bulk Sales Act.

[1] With both of the creditor's contentions I agree. The statute has employed plain and everyday language to express a thought not complex, but simple, that it shall be contrary to law for a sale or transfer in bulk of any part or the whole of the stock of merchandise, or merchandise and fixtures, to be made, except under the conditions named in the statute. The statute has not denounced a sale or transfer of fixtures apart from the merchandise, and the court has no authority to read into the statute a prohibition which the Legislature did not place there. Nor, if the spirit and purpose of the Legislature be searched, is it at all clear that the Legislature intended to bring within the Bulk Sales Act, which was designed to reach fraudulent sales of stocks of merchandise, a sale or transfer of fixtures alone, where the merchandise was not involved. To my mind, the evident purpose of the amendment was, where a sale of merchandise in bulk occurred, to make the purchaser take the fixtures, if they were included in the sale, in the same case as he took the merchandise. In other words, the Legislature attached to the bulk sale of merchandise and fixtures the same stigma which attached to bulk sales of merchandise alone, so that a purchaser would take no good title to anything by that kind of a sale.

But in this view of what the Legislature intended this court may be entirely wrong. I only instance it to show the danger in courts undertaking to construe statutes as the trustee would have the court do, upon a supposed intention of the Legislature, rather than upon the actual language which the Legislature employed to express that intention. I am therefore of the opinion that this transaction, involving, as it did, fixtures alone, is not within the meaning of the Bulk Sales Act.

[2] My conclusion that the order of the referee should be reversed is, however, greatly strengthened by my view that, if the statute does put a transaction in fixtures alone in like case with that of a transaction in merchandise, it does not invalidate this transaction, because this was a mortgage, and a correct construction of the statute does not prohibit a mortgage of the kind in suit. This I think a reading of the statute in the light of the laws which existed when it was passed makes entirely clear.

By article 3970 of the Revised Statutes a mortgage on a stock of goods exposed for sale has been for years prohibited in this state, and the passage of the Bulk Sales Act was not inspired by any desire to protect creditors against mortgages, since their protection as to stocks of goods exposed for sale was already complete. They therefore made no attempt in the Bulk Sales Act to cover or include a mortgage. Had article 3970 not existed, undoubtedly the Legislature would have included within the prohibition of the later statute a mortgage as well as a sale or transfer.

[3] Looking, then, to the evil to be remedied, we find no occasion for the prohibition of a mortgage, and no ground for holding that the Legislature which had on its statutes an act covering in express terms the mortgage of a stock of goods, intended by words which have to do with the passage of title and possession, to inhibit a security transaction; but, as I have before taken occasion to state, it is never a safe guide, until all other guides have failed, to rest a decision as to the meaning of a statute upon a supposition as to what the Legislature had in mind, if they failed to express in the language employed.

The duty of a court is only to find how the law has been written, and not to declare how it ought to be, and, when the Bulk Sales Act is examined in its completeness, it will be found to contain provisions as to what the intended purchaser is expected to do before he can effect his purpose, which cannot be reconciled with the theory that the statute is talking about a mortgage, since it expressly provides that a purchaser, before he takes a transfer, must write each of the creditors, advising them the price and terms of the sale. It is doing judicial violence, not only to the legislative intent, but to the plain, common-sense meaning of the language, to distort a statute which makes such requirements as the Bulk Sales Act does, so as to make it cover an ordinary mortgage taken for security.

[4] Counsel for the trustee invokes the opinion of the Court of Civil Appeals in the Beene Case and the declaration of the national Congress as to the meaning of the words used in the Bankruptcy Act (Comp. St. §§ 9585–9656). As to the congressional definition in the Bankruptcy Act, it is sufficient to say that, had the state Legislature declared that by the use of the term "sale and transfer" a mortgage was covered, of course this court would adopt that construction, and that it is rather an argument against than for in the view that the words themselves connote a mortgage, that the national Congress found it necessary to declare expressly that those terms were intended in the Bankruptcy Act to cover a mortgage as well. Certainly it cannot be contended that an act of the Legislature seeking to prevent bulk sales can be inter-

preted by the court in the light of the view which Congress takes toward a bankruptcy statute designed to effect an entirely different purpose through machinery adequate and complete for effecting it, and with an express definition of the circumstances under which mortgages come within the prohibition of the Bankruptcy Act.

[5, 6] As to the opinion of the Court of Civil Appeals, while it is true that the construction given to a statute by the highest court of a state becomes a part of the statute, and must be given effect by federal courts when applying that same statute to the subject-matter which has received construction, it is also true that the federal court is at liberty to give its own construction to a statute, where the statute has not been concluded by the highest court of the state—in this instance, the Supreme Court of Texas; nor is the court bound to follow the analogies of a ruling by the Supreme Court, where the very question at issue before the federal court has not been by that court decided. Graham v. Englemann (D. C.) 263 Fed. 166.

The opinion relied upon in this case by the referee does not commend itself to this court as sound, and the court is not, therefore, bound to follow it (1) because it is not an opinion of the Supreme Court, and (2) it is not an opinion construing the question at bar here, whether a mortgage upon fixtures is within the Bulk Sales Act.

For the reasons herein stated, the petition for review is sustained, the order of the referee is reversed, and the matter is remanded to the referee, with directions to proceed in accordance with this opinion.